■ WILLIAM J. CIOFFI, an Infant, by ALEXANDRIA CIOFFI, His Guardian ad Litem, et al., Respondents, v. BOARD OF EDUCATION OF THE CITY OF NEW YORK, Appellant.— Judgment appealed from ' affirmed, with $50 costs and disbursements to respondent. From the evidence in the record the jury could properly find inadequate supervision. This is not the case of ordinary snowballing or of an isolated incident where a snowball is thrown and injury results (cf. *Lawes* v. *Board of Educ.*, 16 N Y 2d 302). Hard frozen snow or ice lay upon the ground in the area in the upper yard of the school. The school authorities knew or should have known of this condition. From the testimony some 20 or 30 boys were engaged in iceball throwing with the infant plaintiff as their immediate target. Statements to that effect were obtained by the school authorities from certain students directly after the accident. There was common knowledge of the propensity of children to engage in snowball throwing and at least one teacher testified she had many times witnessed snowballing by the students. The upper yard where the accident

occurred was considered a school yard, and though there was evidently a fairly large group of children playing in that area, no teacher was present to supervise their activities. The circumstances here present measure up to that dangerous condition of which the Court of Appeals spoke, where "hard frozen snow or ice had come into play", and a single child was being pelted by several others (see *Lawes* v. *Board of Educ., supra*, p. 305). The case was submitted to the jury on an unexceptionable charge and the judgment should be affirmed. Concur — Botein, P. J., Stevens and Rabin, JJ.; Steuer, J., dissents in the following memorandum: I dissent on the ground that no breach of any duty to plaintiff was established. Plaintiff, an 11-year-old schoolboy, was returning to the school building after the noon recess. He elected to enter the building through a yard contiguous to it and part of the school premises, which was quite usual and permitted. The yard was used for recreational purposes, and when so used was supervised. On the day in question, February 21, 1962, there was a large accumulation of snow in the yard, due to snowfalls two and three days before. It was plaintiff's proof that a substantial portion of this snow had turned to ice. On plaintiff's entry into the yard, a group of boys then in the yard started throwing snowballs at him. These were naturally from the snow which had fallen there, and one, at least, which struck plaintiff consisted of ice and caused his injuries. From the weather reports, it could fairly be concluded that the school authorities might have learned that at least some of the snow had turned to ice and that the authorities were aware that pupils on their way to and from school did throw snowballs at each other. From this it is a reasonable deduction that some of these snowballs might be composed partly or wholly of ice. The courts of this State now recognize that throwing snowballs and being hit by them is among the commonest seasonal incidents of childhood in this climate. And it is not an undesirable experience. True, on occasion injury results, as it does from any play activity of children. In *Lawes* v. *Board of Educ.* (16 N Y 2d 302, 305) the extent of liability for the consequences of snowball throwing is stated to be to supervise (but not prevent) it during recreational periods. At other times it is to take "energetic steps to intervene * * * if dangerous play comes to its notice while children are within its area of responsibility." It is a fair assumption that the contiguous area is the area of responsibility as it is not reasonably to be expected that snowballs will be thrown in the building itself. And it is further incontrovertible that throwing frozen snow or ice, and the practice of several boys ganging up on one, are dangerous practices. But these are only actionable against the school if its personnel failed to prevent the practice after notice. The fact that fallen snow has partly turned to ice is not notice that ice is going to be thrown. Nor is the fact that on prior occasions there were instances of snowball throwing by pupils (see *Lawes* v. *Board of Educ., supra*, p. 305). Nor is there any claim that there was notice that the boys coming into school from the yard would suddenly pick on the plaintiff. It should be emphasized that the normal reaction of children to snow is not a dangerous practice in and of itself and prevention of it is not enjoined. It is the unusual that should be stopped, and because of its rarity the authorities are under no obligation unless on notice. Notice of the unusual is not to be deduced from existence of the usual, and that is all that this record discloses. The judgment should be reversed and the complaint dismissed on the law.