MAXWELL, J., for the Court:
¶ 1. Esther Perlman’s then-husband, Johnny Lee Adkins, sexually assaulted Zenobia Faul’s ten-year-old granddaughter while the granddaughter was staying in Perlman’s home. Adkins pled guilty to fondling the child and was sentenced to prison. Faul, as her granddaughter’s representative, sued Perlman, alleging Perl-man was liable to her granddaughter for negligent supervision and negligence per se.
*151 ¶ 2. The Harrison County Circuit Court found Faul had failed to present any evidence Perlman had actual or constructive knowledge of her husband’s criminal nature and, thus, no evidence her granddaughter’s injuries were reasonably foreseeable by Perlman. The circuit court granted summary judgment in Perlman’s favor. Because we find no triable issue of material fact and no reversible procedural error, we affirm the circuit court’s grant of summary judgment in Perlman’s favor.
FACTS AND PROCEDURAL HISTORY
¶ 8. A.F.[1] lived with her grandmother, Faul, near Perlman’s residence. Based on her close friendship with Perlman, Faul often left A.F. with Perlman when Faul needed a babysitter. Perlman had married Johnny Lee Adkins in February 2004, after several years of dating and working together. On three separate occasions in 2004, Adkins sexually assaulted A.F., who was approximately ten years old at the time.
¶ 4. All three assaults occurred in Perl-man’s living room, two occurring while A.F. was either watching television or playing a video game with Adkins. A.F. testified Perlman was not in the room when the assaults occurred, and A.F. said nothing to Perlman about what had happened. A.F. later told her mother about the assaults. In 2005, after an investigation, Adkins was arrested. He pled guilty to touching a child for lustful purposes and was sentenced to fifteen years in the custody of the Mississippi Department of Corrections, with ten years suspended.
¶ 5. In July 2007, Faul, as A.F.’s guardian and next friend, filed a civil suit against Perlman, who was no longer married to Adkins.[2] Faul alleged Perlman was liable to A.F. for negligent supervision because the assaults had occurred in Perlman’s home at a time when Perlman had a duty to protect A.F. from harm. Faul also alleged Perlman was liable for negligence per se, but the complaint did not allege what statute or ordinance Perlman violated or that A.F. was part of the class of persons such a statute or ordinance was created to protect. See Simpson v. Boyd, 880 So.2d 1047, 1052-58 (¶ 26) (Miss.2004) (“Violation of a statute or ordinance constitutes negligence per se and will support a cause of action in tort where (1) the plaintiff is within the class protected by the statute, and (2) the harm sustained is the type sought to be prevented by the statute.”) (citation omitted).
¶ 6. Trial was set for July 13, 2010. On June 18,[3] Perlman filed a motion for summary judgment. Faul responded on June 28. The court set a hearing on Perlman’s motion for July 12, the day before trial. But on July 9, the circuit court announced it was granting Perlman’s motion and can-celled both the July 12 hearing and July 13 trial. The circuit court held Faul had failed to create a jury issue on the necessary element of causation because there *152 was no evidence Perlman was on notice Adkins might sexually assault A.F. or that Perlman reasonably foresaw A.F.’s injuries. Accordingly, on July 16, the circuit court entered a final judgment dismissing Perlman as a defendant.[4]
¶ 7. On July 22, Faul filed a motion to reconsider, arguing the circuit court erred by granting summary judgment without a hearing. The circuit court heard Faul’s motion to reconsider on August 26. Faul presented a letter, which she argued she should have been permitted to present at the cancelled summary-judgment hearing. This undated letter, found in Perlman’s home during the 2005 investigation, is addressed to “Mr. Adkins” and was written by “your wife.” It makes four accusations: (1) “You’re a Cheater”; (2) “You go look at girls because I’m out of town”; (3) “I can’t trust you”; and “If you loved me you wouldn’t treat me that way.” Faul argued this letter created a material factual dispute about Perlman’s knowledge of Adkins’s actions.
¶8. After considering the letter and Faul’s other arguments, the circuit court denied Faul’s motion to reconsider for the same reasons it had previously granted summary judgment-a lack of evidence Perlman reasonably foresaw Adkins’s assaults on A.F. The circuit court also addressed Faul’s procedural argument that Perlman’s motion for summary judgment must be deemed abandoned under Rule 4.03(5) of the Uniform Rules of Circuit and County Court. The court explained the summary-judgment hearing was not scheduled to be heard until the day before trial because of the court’s busy schedule, not Perlman’s failure to pursue her motion.
¶ 9. Faul timely appealed.
STANDARD OF REVIEW
¶ 10. There are two procedural avenues to ask for reconsideration of a judgment-a Rule 59(e) motion to alter or amend a judgment or a Rule 60 motion for relief from a judgment or order. M.R.C.P. 59(e); M.R.C.P. 60. “How a court treats a motion for reconsideration turns on the time at which the motion is served. If the motion is served within ten days of the rendition of judgment, the motion falls under Rule 59(e).” Carlisle v. Allen, 40 So.3d 1252, 1260 (¶ 33) (Miss.2010) (quoting Cannon v. Cannon, 571 So.2d 976, 978 n. 2 (Miss.1990)). “An appeal from a denial of a Rule 59 motion may address the merits of the entire underlying proceeding, while review of a denial of a Rule 60 motion considers only whether a judge abused the broad discretion granted by that rule.” Sanford v. Sanford, 749 So.2d 353, 357 (¶ 16) (Miss.Ct.App.1999) (citing Overbey v. Murray, 569 So.2d 303 (Miss.1990)). Because Faul filed her motion to reconsider within ten days of the entry of the final judgment, her motion falls under Rule 59(e). Thus, we address the merits of the court’s grant of summary judgment.
¶ 11. Our standard of review for a trial court’s grant or denial of a motion for summary judgment is de novo. Lewallen v. Slawson, 822 So.2d 236, 237 (¶ 6) (Miss.2002) (citations omitted). Summary judgment is proper “if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” M.R.C.P. 56(c). To withstand summary judgment, the nonmoving party must produce significant probative evidence of a genuine issue for trial. Borne v. Dunlop Tire Corp., 12 So.3d 565, 570 (¶ 16) (Miss.Ct. *153 App.2009) (citing Price v. Purdue Pharm. Co., 920 So.2d 479, 485 (¶ 16) (Miss.2006)). Summary judgment must be granted when the nonmoving party “fails to make a showing sufficient to establish the existence of an element essential to his case and on which he bears the burden of proof at trial.” Id. (citing Grisham v. John Q. Long V.F.W. Post, No. 4057, Inc., 519 So.2d 413, 416 (Miss.1988)). “[T]he [trial] court’s decision is reversed only if it appears that triable issues of fact remain when the facts are viewed in the light most favorable to the nonmoving party.” Robinson v. Singing River Hosp. Sys., 732 So.2d 204, 207 (¶ 12) (Miss.1999) (citation omitted).
DISCUSSION
¶ 12. Faul’s appeal raises both substantive and procedural issues. Substantively, Faul asserts a material factual dispute exists concerning Perlman’s knowledge of Adkins’s sexual acts and propensities. Thus, she argues the grant of summary judgment based on lack of evidence of causation was improper. Procedurally, she argues the circuit court violated both the Mississippi Rules of Civil Procedure and the Uniform Rules of Circuit and County Court by granting summary judgment without a hearing four days before the scheduled trial. M.R.C.P. 56; URCCC 4.03(5). She claims the circuit court was required to deem that Perlman had abandoned her summary-judgment motion because it was not heard at least ten days prior to trial. URCCC 4.03(5).
¶ 13. On de novo review, we affirm the circuit court’s grant of summary judgment, as we too find Faul failed to present a triable fact issue on the foreseeability of Adkins’s sexual propensities. And because we find no material factual dispute existed and no evidence Perlman actually abandoned her motion for summary judgment, we find the circuit court’s failure to follow the mandatory requirements of Rules 56 and 4.03 is harmless error.
I. Faul’s Claims
A. Negligent Supervision
¶ 14. For Faul to recover for negligent supervision, she “bears the burden of producing evidence sufficient to establish the existence of a duty, breach, proximate causation, and damages.” Buck ex rel. Buck v. Camp Wilkes, Inc., 906 So.2d 778, 781 (¶ 10) (Miss.Ct.App.2004) (quoting Simpson, 880 So.2d at 1050 (¶ 12)); see also Todd v. First Baptist Church of W. Point, 993 So.2d 827, 829 (¶ 10) (Miss.2008); Glover ex rel. Glover v. Jackson State Univ., 968 So.2d 1267, 1276 (¶ 29) (Miss.2007).
¶ 15. We begin with duty. “Common law traditionally has not imposed a broad duty upon individuals to control the conduct of others.” Warren ex rel. Warren v. Glascoe, 852 So.2d 634, 639 (¶ 17) (Miss.Ct.App.2003) (quoting Hazel Glenn Bell, Tort Liability for Intentional Act of Family Members: Will Your Insurer Stand By You?, 68 Tenn L.Rev. 1, 6 (2000)). But there are circumstances in which a person owes a duty to protect against the actions of another. For example, “[although not an insurer of an invitee’s safety, a premises owner owes a duty to exercise reasonable care to protect the invitee from reasonably foreseeable injuries at the hands of another.” Simpson, 880 So.2d at 1051 (¶ 14) (citing Newell v. S. Jitney Jungle Co., 830 So.2d 621, 623 (¶ 6) (Miss.2002)). Similarly, “[a]lthough a board of education is not an insurer of the safety of its students, there is an obligation to supervise adequately the activities of students within its charge, and it will be held liable for a foreseeable injury proximately related to the absence of supervision.” Summers ex rel. Dawson v. St. *154 Andrew’s Episcopal Sch., Inc., 759 So.2d 1203, 1214 (¶ 47) (Miss.2000) (citing James v. Gloversville Enlarged Sch. Dist., 155 A.D.2d 811, 548 N.Y.S.2d 87, 88 (N.Y.1989)).
¶ 16. Mississippi has not addressed the specific circumstances of this case — a wife’s duty to protect against and/or warn about her husband’s criminal conduct toward a minor under her care in her home. But in Chaney v. Superior Court, 39 Cal.App.4th 152, 46 Cal.Rptr.2d 73, 75 (1995), the California Court of Appeals addressed this very factual scenario, finding:
Where, as here, a complaint alleges injuries resulting from the criminal acts of third persons the common law, reluctant to impose liability for nonfeasance, generally does not impose a duty upon a defendant to control the conduct of another, or to warn of such conduct, unless the defendant stands in some special relationship either to the person whose conduct needs to be controlled, or to the foreseeable victim of such conduct.
(Internal quotations and citations omitted). The California Court of Appeals concluded: “[WJhere a wife invites a child into her home[,] she assumes a special relationship based on the child’s dependence upon her.” Id. at 75-76 (citing Pamela L. v. Farmer, 112 Cal.App.3d 206, 169 Cal.Rptr. 282 (1980)).
¶ 17. As with Mississippi’s premises liability and teacher liability doctrines, California’s spousal liability is based on the foreseeability of the husband or wife’s behavior. “[WJhere a child is sexually assaulted in the defendant wife’s home by her husband, the wife’s duty of reasonable care to the injured child depends on whether the husband’s behavior was reasonably foreseeable.” Id. at 76; cf. Simpson, 880 So.2d at 1051 (¶ 14); Summers, 759 So.2d at 1214 (¶ 47). “Without knowledge of her husband’s deviant propensities, a wife will not be able to foresee that he poses a danger and thus will not have a duty to take measures to prevent the assault.” Chaney, 46 Cal.Rptr.2d at 76. So we find, in order to establish Perl-man’s duty to protect A.F. from Adkins’s criminal acts, Faul had to produce evidence Perlman had “knowledge of her husband’s deviant propensities.” Id.
¶ 18. The circuit court correctly found foreseeability, based on Perl-man’s knowledge of Adkins’s deviant propensities, was also necessary to establish proximate cause. “There is no liability predicated on lack or insufficiency of supervision where the event in connection with which the injury occurred was not reasonably foreseeable.” Levandoski v. Jackson County Sch. Dist., 328 So.2d 339, 342 (Miss.1976) (citation omitted). This is so because, “[i]n order for an act of negligence to proximately cause the damage, the fact finder must find that the negligence was both the cause in fact and legal cause of the damage.” Glover, 968 So.2d at 1277 (¶ 31) (citing Dobbs, The Law of Torts § 180, at 443 (2000)) (emphasis added). And a defendant’s negligence is the legal cause of the damage only when the “damage is the type, or within the classification, of damage the negligent actor should reasonably expect (or foresee) to result from the negligent act.” Id. at 1277 (¶ 33).
¶ 19. The circuit court held Faul offered no proof to show Perlman knew or should have known of Adkins’s propensities to commit the sexual assaults or that Perlman had any knowledge that the crimes were being committed. The circuit court applied the foreseeability test for premises owners from Simpson, which looks for actual or constructive knowledge. Simpson, 880 So.2d at 1051 (¶ 14) (holding *155 plaintiff can prove foreseeability by showing “the defendant had actual or constructive knowledge of the assailant’s violent nature”). We note California’s foreseeability test for spouses of child molesters is actual knowledge. Chaney, 46 Cal.Rptr.2d at 76 (quoting Uccello v. Laudenslayer, 44 Cal.App.8d 504, 118 Cal.Rptr. 741, 748 n. 4 (1975)) (“Only where the circumstances are such that the defendant ‘must have known’ and not ‘should have known’ will an inference of actual knowledge be permitted.”); see also J.S. v. R.T.H., 155 N.J. 330, 714 A.2d 924, 930 (1998) (adopting the “particularized foreseeability” test for spouses of child molesters, “a standard of foreseeability ... that is based on ‘particular knowledge’ or ‘special reason to know’”) (citations omitted). But see Doe v. Franklin, 930 S.W.2d 921, 928 (Tex.Ct.App.1996) (holding the test for foreseeability is whether the wife knew or should have known of her husband’s proclivities). Because we find Mississippi’s public policy of protecting children against sexual predators warrants strong protection, we hold proof of constructive knowledge of a spouse’s proclivity toward child molestation is sufficient to establish not only a duty to protect the child but also proximate cause. Cf. Summers, 759 So.2d at 1214 (¶¶ 48-19) (holding, in negligent-supervision claim by student against teacher, foreseeability of a student’s injury by other students can be based on what the teacher should have known about the students’ behavior). But we agree with the circuit court that here Faul offered no proof Perlman should have known of Adkins’s deviant propensities.
1120. In Glover, the minor rape victim’s supervisor knew that the two young men who assaulted her had violent tendencies and had expelled one of them from the youth program the victim attended. Glover, 968 So.2d at 1279 (¶ 40); see also Pamela L., 169 Cal.Rptr. at 284-85 (holding wife unreasonably exposed neighbor’s children to danger because she invited the children over in spite of knowing her husband had molested children in the past). Similarly, in Summers, the injured student presented evidence that she had reported to her teacher that she had been slapped, scratched, and kicked by her classmates in the past, creating a jury issue of whether her teacher should have foreseen her being injured by her classmates. Summers, 759 So.2d at 1214 (¶ 48); see also Doe, 930 S.W.2d at 927 (holding evidence granddaughter told her grandmother she was being molested by her grandfather was sufficient to raise factual issue about grandmother’s knowledge of husband’s sexual activities).
¶21. In contrast, Perlman had known Adkins for several years before they married. During that time Adkins had never been reported, arrested, or convicted for committing a crime, let alone a crime against a child. And A.F. testified she never told Perlman what had happened. Therefore, we find the factual evidence sufficient to survive summary judgment in Glover and Summers is not present here.
¶ 22. The letter to Adkins offered at the reconsideration hearing, which accused Adkins of being a “cheater” and “looking] at girls because I’m out of town,” was undated and not found by the police investigating Adkins until January 25, 2005, after all three incidents occurred. Further, the text of the letter does not refer to his sexual proclivities for children. So it creates no genuine dispute of what Perlman knew or should have known about Adkins’s deviant behavior towards children in 2004, when all three assaults — and Perl-man’s alleged negligence — occurred.
¶23. Further, we reject Faul’s assertion that Perlman’s deposition testimony that she knew where A.F. was and *156 what A.F. was doing at all times when A.F. was at Perlman’s house is evidence that Perlman knew or should have known Adkins was assaulting A.F. Faul is correct that, as the non-moving party, she is entitled to all reasonable inferences from the evidence. Partin v. N. Miss. Med. Ctr., Inc., 929 So.2d 924, 929 (¶ 16) (Miss.Ct.App.2005); see also Buckel v. Chaney, 47 So.3d 148, 156 (¶ 26) (Miss.2010) (quoting Thomas v. The Great Atl. & Pac. Tea Co., Inc., 233 F.3d 326, 330 (5th Cir.2000)) (“Summary judgment is improper when the plaintiff has advanced enough circumstantial evidence to take his claims out of the realm of ‘mere conjecture’ and plant them in the solid ground of ‘reasonable inference.’ ”). But it is not reasonable to infer that, because Perlman testified she knew where A.F. was and what she was doing, she knew that Adkins was assaulting A.F.
¶ 24. Perlman testified, while A.F. may have been out of her field of vision, Perl-man knew when A.F. was watching television or playing the computer in the living room, a separate room with a door in the front of the house. A.F. testified all three assaults occurred in this room, the first while A.F. was watching television and the second while she was playing a computer game. Perlman testified she knew Adkins would sometimes help A.F. set up a video to watch or a computer game to play. Thus, at most, it can be inferred that Perlman knew Adkins was in the room with A.F. while A.F. was watching television or playing on the computer. It cannot be reasonably inferred that Perlman knew or should have known Adkins was sexually assaulting A.F., absent some evidence Perlman had actual or constructive knowledge of Adkins’s sexual proclivities.
¶ 25. Because we find no material factual dispute concerning foreseeability, we affirm the circuit court’s grant of summary judgment on Faul’s negligent-supervision claim.
B. Negligence per se
¶ 26. To establish negligence per se, a plaintiff must show: (1) the defendant breached a statute or ordinance; (2) the plaintiff was within the class protected by the statute or ordinance; and (3) “the violation proximately caused his injury.” Palmer v. Anderson Infirmary Benevolent Ass’n, 656 So.2d 790, 796 (Miss.1995). Faul’s complaint alleged Perlman was negligent per se. But it neither alleged the particular statute or ordinance Perlman had violated nor that A.F. was within the class protected by that statute. Further, Faul failed to alleged that violation of a statute proximately proximately caused her injury. Thus, Faul failed to state she was entitled to relief against Perlman on this claim. M.R.C.P. 8(a)(1).
¶ 27. And at the summary-judgment stage, Faul did not dispute Perlman’s argument that the complaint failed to allege a negligence per se claim against Perlman. Nor did she mention the statute or ordinance Perlman violated. Though the circuit court did not specifically address Faul’s negligence per se claim in its order granting summary judgment, it is clear from his order finally dismissing Perlman as a defendant that the circuit court was dismissing both claims against Perlman. On appeal, Faul does not argue her negligence per se claim should have gone to a jury, let alone cite any legal authority or record evidence in support of this claim. “Because the appellant bears the burden of persuasion on appeal, this Court will not consider issues on appeal for which the appellant cites no supporting authority.” Sumrall v. Miss. Power Co., 693 So.2d 359, 363 (Miss.1997) (citations omitted).
¶ 28. We therefore affirm the dismissal of Faul’s negligence per se claim as it was *157 insufficiently plead and not raised as on appeal.
II. Procedure
¶ 29. While Faul is correct that granting summary judgment without a hearing is error, this error “may be harmless error if there are, indeed, no triable issues of fact.” Partin, 929 So.2d at 934 (¶ 38) (citing Croke v. Southgate Sewer Dist., 857 So.2d 774, 778 (¶ 10) (Miss.2003); Adams v. Cinemark USA, Inc., 831 So.2d 1156, 1163 (¶ 26) (Miss.2002)). “Adams, specifically, declared that a summary judgment motion may be decided upon written briefs, if it appears that there are no genuine issues of material fact.” Partin, 929 So.2d at 934-35 (¶ 38). Here, we find no genuine issue of material fact and, thus, no reversible error in the circuit court’s failure to hold a hearing before granting relief under Rule 56(c). Further, any error was cured by the circuit court’s hearing on Faul’s motion to reconsider, in which Faul was permitted to present the evidence she argues she was entitled to bring in the summary-judgment hearing.
¶ 30. We also find no reversible error in the circuit court’s not deeming Perlman’s motion for summary judgment abandoned under Uniform Rule of Circuit and County Court 4.03(5). There is simply no evidence Perlman failed in her duty to pursue her motion for summary judgment under Uniform Rule of Circuit and County Court 2.04. See Nance v. State, 766 So.2d 111, 114 (¶ 13) (Miss.Ct.App.2000) (reading Rules 2.04 and 4.03(5) in conjunction in determining whether moving party abandoned motion).
¶ 31. In affirming the circuit court’s grant of summary judgment, we do not gloss over the mandatory “shall” language of Rule 4.03. Rule 4.03(5) does declare: “All dispositive motions shall be deemed abandoned unless heard at least ten days prior to trial.” URCCC 4.03(5). But as with our consideration of the mandatory requirements of Rule 56, we apply a harmless-error analysis to the mandatory procedural requirements of Rule 4.03(5). Adams, 831 So.2d at 1163-64 (¶¶ 26-27) (citing Sherrod v. U.S. Fid. & Guar. Co., 518 So.2d 640 (Miss.1987); Restigouche, Inc. v. Town of Jupiter, 59 F.3d 1208 (11th Cir.1995); Lone Star Steel Co. v. Scott, 759 S.W.2d 144 (Tex.Ct.App.1988) (applying harmless error rule to errors “involving the violation of procedural rules couched in mandatory language”)). Here, we find harmless error because there is no evidence Perlman had actually abandoned her motion for summary judgment ten days prior to trial.
¶ 32. Under Rule 2.04:
It is the duty of the movant, when a motion or other pleading is filed, including motions for a new trial, to pursue said motion to hearing and decision by the court. Failure to pursue a pretrial motion to hearing and decision before trial is deemed an abandonment of that motion; however, said motion may he heard after the commencement of trial in the discretion of the court.
URCCC 2.04 (emphasis added). Trial was set for July 13. Perlman filed her motion for summary judgment on June 15 and set it for hearing. Faul responded on June 28. As noted by the circuit court, the earliest the court could hear the motion was July 12. We agree with the circuit court that the fact Perlman’s motion was not heard by July 2 was due to the court’s busy schedule, not Perlman’s failure to pursue her dispositive motion to a hearing and disposition. URCCC 4.03(5); URCCC 2.04. Cf. Braddock Law Firm, PLLC v. Becnel, 949 So.2d 38, 46-47 (¶ 31) (Miss.Ct.App.2006) (holding trial court had discretion to look past party’s failure to techni *158 cally comply with Rule 4.03(2) so long as the purposes of the rule were fulfilled).
¶ 33. We find no reversible error in the circuit court’s not deeming Perlman’s motion abandoned. Further, Faul cannot show she was prejudiced by the timing of the circuit court’s consideration because, as already discussed, she has not demonstrated a triable factual dispute exists concerning Perlman’s liability.
CONCLUSION
¶ 34. Upon de novo review of the merits, we find no material factual dispute on the issue of foreseeability. Thus, we find no reversible error in the circuit court’s disposition of Perlman’s motion for summary judgment within ten days prior to trial and without a hearing. We affirm the circuit court’s grant of summary judgment in favor of Perlman and its final dismissal of Perlman as a defendant in this case.
¶ 35. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON, RUSSELL AND FAIR, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.

. Because of the nature of the crime and the victim's age, this opinion refers to Faul's granddaughter by her initials only.

. Faul also named Adkins as a defendant, bringing claims of assault and battery, intentional infliction of emotional distress, and negligence per se. Adkins did not join Perl-man's motion for summary judgment. Upon granting Perlman summary judgment, the circuit court certified the judgment in favor of Perlman as final. See M.R.C.P. 54(b) (providing that a judgment resolving claims between fewer than all the parties becomes final and appealable upon an express judicial determination that there is no just reason for delay and express judicial direction of the entry of a final judgment). Adkins is not a party to this appeal.

.All subsequent dates are from 2010.

. See note 2, supra.